## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

MAURICE WILLIAMS                                        CIVIL ACTION

VERSUS

TOWN OF CLINTON, ET AL.                          NO. 23-00119-BAJ-RLB

## RULING AND ORDER

Before the Court is Defendants' **Motion For Summary Judgment (Doc. 54)**.
The Motion is opposed. (Doc. 59). Plaintiff filed a Reply Brief. (Doc. 69). For the
following reasons, Defendants' Motion (Doc. 54) is **GRANTED IN PART** and
**DENIED IN PART**.

### I.     FACTS

This case arises out of Plaintiff's alleged false arrest and the alleged excessive
force used on Plaintiff during the arrest. (Doc. 1).

On October 19, 2021, Officer Charles Brown was dispatched to Plaintiff's
neighbor's home. (Doc. 54-2 ¶ 1; Doc. 59-1 ¶ 1). Plaintiff's neighbor complained to
police that for "months," Plaintiff's dogs had been "constantly coming into her yard
and front door using the restroom and killing her plants." (*Id.*). While there, Brown
issued a summons to Plaintiff for violating the "dogs at large" ordinance.
(Doc. 54-2 ¶ 3; Doc. 59-1 ¶ 3). The summons set a court appearance for
December 7, 2021. (*Id.*).

The parties dispute whether Plaintiff appeared in court as required, and there is a discrepancy between the date listed on the summons and the correct court date on which Plaintiff should have appeared. (Doc. 54-2 ¶ 4; Doc. 59-1 ¶ 4). Defendants admit that Brown wrote the incorrect court date on the summons but indicate that Brown believed the date to be correct at the time and suggested confusion over a court scheduling change. (Doc. 54-2 ¶ 5). Plaintiff admits that Brown "finally made a statement to clarify the 'confusion' regarding the incorrect date on the summons" but argues that Brown purposefully wrote the wrong date on the summons. (Doc. 59-1 ¶ 5).

The parties agree that ultimately, a judge in the 20th Judicial District Court for the State of Louisiana issued a bench warrant for Plaintiff's arrest. (Doc. 54-2 ¶ 4; Doc. 59-1 ¶ 4). The warrant orders Plaintiff's arrest for "FAILURE TO APPEAR FOR ARRAIGNMENT 3:2771 DOGS NOT TO RUN AT LARGE[.]" (Doc. 20-1 at 48).

On January 24, 2022, Brown issued a second summons to Plaintiff for violating the "dogs at large" ordinance. (Doc. 54-2 ¶ 6; Doc. 59-1 ¶ 6). On the summons, Brown wrote: "Subject began making threats towards me[.]" (Doc. 54-2 ¶ 7; Doc. 59-1 ¶ 7).

On January 28, 2022, the District Attorney called Plaintiff to inform him about the bench warrant and instructed Plaintiff to contact the judge that issued the warrant. (Doc. 54-2 ¶¶ 8, 10; Doc. 59-1 ¶¶ 8, 10). Plaintiff recognized the District Attorney's phone number because he had "worked with [the District Attorney] on several things before." (Doc. 54-2 ¶ 9; Doc. 59-1 ¶ 9). Plaintiff contacted

the judge who issued the warrant, and the judge arranged a meeting with Plaintiff on the afternoon of March 2, 2022. (Doc. 54-2 ¶ 11; Doc. 59-1 ¶ 11).

On the morning of March 2, 2022, Brown went to Plaintiff's home to execute the bench warrant. (Doc. 54-2 ¶ 14; Doc. 59-1 ¶ 14). At the time of the arrest, Plaintiff acknowledged the warrant to Brown, stating, "Yeah, I know. [The District Attorney] called me Monday and I'm meeting with the judge [] this afternoon." (Doc. 54-2 ¶ 12; Doc. 59-1 ¶ 12). During the arrest, an altercation ensued.

The entire interaction took place on the front porch and at the threshold of an exterior door to Plaintiff's home; Brown never entered the home. (Doc. 54-2 ¶ 15; Doc. 59-1 ¶ 15). It is undisputed that at the time of the arrest: (1) Plaintiff was barefoot and had a hard cast on his right arm; (2) Plaintiff kept two handguns in his home; and (3) Plaintiff's fourteen-year-old granddaughter was inside his home. (Doc. 54-2 ¶¶ 16–19; Doc. 59-1 ¶¶ 16–19).

When Brown informed Plaintiff that he was under arrest, Plaintiff rotated back towards his home to "grab [his] shoes." (Doc. 54-2 ¶ 19; Doc. 59-1 ¶ 19). Plaintiff asserts that he did not "make any type of offensive move towards [] Brown; all he wanted was his shoes."  (Doc. 59-1 ¶ 20). Defendants assert that Brown initiated contact with Plaintiff when Plaintiff made a movement to turn back inside his home. (Doc. 54-2 ¶ 20). The initial physical contact caused Plaintiff's face to make contact with the door jam. (Doc. 54-2 ¶ 21; Doc. 59-1 ¶ 21).

Next, Defendants assert that Plaintiff moved toward a second exterior door of his home. (Doc. 54-1 ¶ 21). Plaintiff argues that he stepped onto the front porch of his

3

home to alert his granddaughter to his arrest when Brown pepper sprayed him. (Doc. 59-1 ¶ 21).

At 9:57:18 AM, Officer Brown made an emergency radio transmission stating, "SUBJ IS FIGHTING." (Doc. 54-2 ¶ 24; Doc. 59-1 ¶ 24). At 9:57:26 AM, eight seconds later, Officer Brown transmitted that the subject was "DETAINED." (Doc. 54-2 ¶ 25; Doc. 59-1 ¶ 25). After the arrest, Brown transported Plaintiff to the East Feliciana Parish Jail and called for an ambulance to evaluate Plaintiff. (Doc. 54-2 ¶ 26; Doc. 59-1 ¶ 26).

## II.    PROCEDURAL HISTORY

On February 17, 2023, Plaintiff filed suit against Officer Charles Brown and the Town of Clinton. Defendants moved to dismiss. (Doc. 10). On Defendants' Motion to Dismiss, the Court dismissed Plaintiff's claims of false arrest, defamation, malicious prosecution, and punitive damages, without prejudice to Plaintiff's right to amend his Complaint. (Doc. 26).

On January 16, 2024, Plaintiff filed an Amended Complaint, asserting the following claims under federal law: (1) false arrest; (2) illegal seizure and excessive force; and (3) malicious prosecution. (Doc. 30). Plaintiff also asserts the following state law claims: (1) battery; (2) defamation; and (3) malicious prosecution. (*Id.*).

Now, Defendants move for summary judgment on each of Plaintiff's claims. For the following reasons, Defendants' Motion (Doc. 54) will be **GRANTED IN PART** and **DENIED IN PART**.

4

### III.  LEGAL STANDARD

A district court should "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018) ("This occurs when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

For issues on which the movant bears the burden of proof at trial, they "must come forward with evidence which would entitle [them] to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence establishing a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id*. at 1265.

Where the nonmovant bears the burden of proof at trial, the moving party must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the claim. *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 885 (1990). Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward evidence to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). "The evidence of the non-movant is to be believed,

and all justifiable inferences are to be drawn in [its] favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

## IV.  DISCUSSION

Defendants move for summary judgment on each of Plaintiff's claims, arguing the undisputed facts show that: (1) Brown's arrest of Plaintiff was conducted pursuant to a facially valid judicial warrant and was therefore supported by probable cause; (2) Brown's calibrated use of force was an objectively reasonable response to Plaintiff's admitted and escalating physical resistance; and (3) the official reporting of the arrest was protected by a qualified privilege. (Doc. 54). Alternatively, Defendants argue that Brown is entitled to qualified immunity. The Court will address each claim in turn.

### A. False Arrest Claims Under Federal and State Law.

First, Defendants argue that Plaintiff's false arrest claims under both federal and state law must fail because Brown conducted the arrest pursuant to a facially valid bench warrant.

Under federal law, to establish that Defendants violated Plaintiff's constitutional rights by arresting him, Plaintiff must show that the officers lacked probable cause. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (internal citations omitted). "If there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails." *Id.* (citing *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)).

Under Louisiana law, "[f]alse arrest and imprisonment occur when one arrests

6

and restrains another against his will without a warrant or other statutory authority. Simply stated, it is restraint without color of legal authority." *Deville*, 567 F.3d at 172 (citing *Kyle v. City of New Orleans,* 353 So.2d 969, 971 (La. 1977)). "A facially valid arrest warrant immunizes the officers from false arrest and imprisonment claims[.]" *Deville*, 567 F.3d at 172 (citing *Deville v. Jefferson Par. Sheriff's Dep't*, 1999-1629 (La. App. 3 Cir. 5/3/00), 762 So. 2d 641, 643, *writ denied*, 2000-1589 (La. 8/31/00), 766 So. 2d 1281; *Rodriguez v. Deen*, 33,308 (La. App. 2 Cir. 5/10/00), 759 So. 2d 1032, 1035, *writ denied*, 2000-1414 (La. 6/23/00), 765 So. 2d 1049; *Molette v. City of Alexandria,* 2005 WL 2445432, at *8 (W.D. La. 2005)).

This Court has found it appropriate to consider false arrest claims under both federal and state law together, and the Court will do so here. *Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 381–82 (M.D. La. 2022) ("This Court's analysis to [p]laintiffs' § 1983 false imprisonment and false arrest claims applies with equal force to the state law claims.") (citing *O'Dwyer v. Nelson*, 310 F. App'x 741, 745 n.4 (5th Cir. 2009) (finding that, because Fourth Amendment principles underpin Louisiana law relating to false arrests, the Fourth Amendment inquiry was applicable to both plaintiff's federal and state law claims) (additional citations omitted)).

Here, Defendants argue that Plaintiff's arrest, made pursuant to a facially valid warrant, is, by definition, an arrest supported by probable cause. (Doc. 54-1 at 16). Because Brown's arrest of Plaintiff was lawful, Defendants contend that Plaintiff's false arrest claims must fail. (*Id.*).

Plaintiff admits that generally, an intermediary's decision breaks the chain of causation for a false arrest claim. (Doc. 59 at 11). Plaintiff asserts, however, that Defendants may still be liable for false arrest "if the plaintiff shows that the deliberations of the intermediary were in some way tainted by the actions of the [D]efendant." (*Id.*).

The United States Court of Appeals for the Fifth Circuit has held: "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017) (citing *Deville*, 567 F.3d at 170; *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 949 (5th Cir. 2003) (en banc)). "[T]he initiating party may be liable for false arrest," however, "if the plaintiff shows that the 'deliberations of that intermediary were in some way tainted by the actions of the defendant.'" *McLin*, 866 F.3d at 689 (citing *Deville*, 567 F.3d at 170; *Taylor*, 36 F.3d at 456; quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988)). But, "because the intermediary's deliberations protect even officers with malicious intent," a plaintiff must show that the official's malicious motive led the official to withhold relevant information or otherwise misdirect the independent intermediary by omission or commission. *McLin*, 866 F.3d at 689 (citing *Buehler v. City of Aus./Aus. Police Dep't.*, 824 F.3d 548, 555 (5th Cir. 2016); *Hand*, 838 F.2d at 1427).

The Fifth Circuit has held that "mere allegations of 'taint,' without more, are

insufficient to overcome summary judgment." *McLin*, 866 F.3d at 689 ("We have previously held that 'mere allegations of taint, without more, are insufficient to overcome summary judgment.'") (quotations omitted) (citing *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010); *see, e.g., id.* at 813–14 (finding no "fact issue" regarding whether appellees tainted the decision of two grand juries to return indictments); *Taylor*, 36 F.3d at 456–57 (finding that plaintiffs presented no summary judgment evidence showing that the intermediary was tainted by the actions of the defendants); *Buehler*, 824 F.3d at 555–56 (finding no error in district court summary judgment ruling that appellant "failed to show a triable issue whether the grand jury's findings of probable cause were obtained by false or misleading statements by the arresting officers")).

Rather, Plaintiff must "affirmatively show[ ]" that the defendants tainted the intermediary's decision. *Buehler*, 824 F.3d at 555 (citing *Craig v. Dall. Area Rapid Transit Auth.*, 504 F. App'x 328, 332 (5th Cir. 2012); *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004)). To satisfy the taint exception, omissions of exculpatory information must be "knowing[ ]." *Buehler*, 824 F.3d at 555 (citing *Cuadra*, 626 F.3d at 813–14; *Allen v. Jackson Cnty.*, 623 F. App'x 161, 162 (5th Cir. 2015)). And because the intermediary's deliberations protect even officers with malicious intent, that an officer "harbored ill-will toward" the defendant does not suffice. *Buehler*, 824 F.3d at 555 (citing *Hand*, 838 F.2d at 1427; *Craig*, 504 F. App'x at 333).

Here, Defendants argue that Brown's deposition testimony demonstrates, at

9

worst, simple mistake or negligence, and "shows the opposite of knowledge, intentionality, or reckless disregard for the truth." (Doc. 54-1 at 18). Brown testified as follows:

> Q. Who wrote up the summons?
>
> A. I wrote it up.
>
> Q. Okay. Who decided to put December 7th on there?
>
> A. I put what our court date was.
>
> Q. You thought the court date was on December 7th; right?
>
> A. At that time it was supposed to be.
>
> Q. So you're saying the judge was wrong?
>
> A. I don't know who was wrong.

(Doc. 57-5 at 48:22–49:6).

Plaintiff responds that Brown purposefully provided the wrong date on the summons, based "[o]n information and belief." (Doc. 59 at 12 (Plaintiff's Opposition Brief, stating: "On information and belief, Defendant Brown purposefully provided the wrong date on the summons, which in turn resulted in the issue of the arrest warrant.")). The only evidence Plaintiff relies on is a November 29, 2022 transcript of state court proceedings, in which the state court judge stated that the summons "clearly states that [Plaintiff] was summoned to appear in Mayor's Court on December 7th. Mayor's Court is not on a Tuesday; it's on Monday. So the officer who wrote the ticket very obviously created all this confusion by putting the wrong date on the ticket." (Doc. 20-1 at 30–31). As Defendants point out, this transcript, at most,

shows a mistake. Plaintiff has pointed to no other summary judgment evidence in support of his assertion that Brown knowingly and purposefully tainted the intermediary's decision in issuing the warrant for Plaintiff's arrest.

Without more, Plaintiff's "mere allegations of taint" are insufficient to survive summary judgment under Fifth Circuit precedent. Accordingly, Plaintiff's false arrest claims under both state and federal law are **DISMISSED WITH PREJUDICE.** Defendants' Motion for Summary Judgment (Doc. 54) is **GRANTED** in this respect.

### B. Malicious Prosecution Claims Under Federal and State Law.

Second, Defendants move for summary judgment on Plaintiff's malicious prosecution claims under both federal and state law. The Fifth Circuit has emphasized that, similar to false arrest, "the gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause." *Hughes v. Garcia*, 100 F.4th 611, 619 (5th Cir. 2024) (citing *Thompson v. Clark*, 596 U.S. 36, 43 (2022)). Because "[t]he elements of a § 1983 malicious prosecution claim and the elements of a Louisiana state malicious prosecution claim are coextensive[,]" the Court will simultaneously analyze whether there has been a violation of a constitutionally protected right along with the state law malicious prosecution claim.[1] *Wooten v. Harrell*, No. CV 23-368-SDD-SDJ,

---

[1] Under Louisiana law, the elements of a malicious prosecution claim are: (1) the commencement or continuation of an original criminal or civil proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. *Deville*, 567 F.3d at 173 (citing *Jones v. Soileau,* 448 So.2d 1268, 1271 (La. 1984)).

2024 WL 1815349, at *7 (M.D. La. Apr. 25, 2024) (citing *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023)).

The parties' arguments regarding Plaintiff's malicious prosecution claims mirror the arguments raised concerning Plaintiff's false arrest claims. Plaintiff argues that the state court judge's finding of probable cause was tainted by Brown's inclusion of the wrong date on the summons. (Doc. 59 at 13). Plaintiff contends that "whether Brown put the incorrect date on the summons due to malice or incompetence is the role of the fact finder." (*Id.*).

Defendants respond that at the summary judgment stage, after discovery is complete, Plaintiff cannot rest on "information and belief" or bare allegations. (Doc. 69 at 16). Instead, Defendants contend that Plaintiff must produce evidence, but Plaintiff has produced none. (*Id.*).

For the same reasons discussed in Section A, *supra*, the Court finds that Plaintiff's arrest was supported by a bench warrant, and there is no summary judgment evidence supporting Plaintiff's argument that Brown tainted the state court judge's decision when issuing the warrant. Accordingly, Plaintiff's malicious prosecution claims under both state and federal law are **DISMISSED WITH PREJUDICE.** Defendants' Motion for Summary Judgment (Doc. 54) is **GRANTED** in this respect.

### C. Excessive Force Claim Under Federal Law and Battery Claim Under State Law.

Third, Defendants contend that they are entitled to summary judgment on Plaintiff's excessive force claim under federal law and battery claim under state law

because Brown's use of force was objectively reasonable. (Doc. 54-1 at 22). Plaintiff responds that a genuine issue of material fact precludes summary judgment because Plaintiff and Brown have two conflicting accounts of what transpired on the morning of March 2, 2022, such that the jury must decide. (Doc. 59 at 6–7).

### i.    Excessive Force.

"To prevail on an excessive-force claim, a plaintiff must show (1) [an] injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Wooten*, 2024 WL 1815349, at *6 (citing *Darden v. City of Ft. Wor., Tex.*, 880 F.3d 722, 728 (5th Cir. 2018); quoting *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016)). Excessive force claims are necessarily fact intensive, and "whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Wooten*, 2024 WL 1815349, at *6 (citing *Deville*, 567 F.3d at 167; quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Factors the Court should consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Additionally, "[t]he extent of the injury required to demonstrate that the force used was excessive depends on the context in which the injury occurs." *Wooten*, 2024 WL 1815349, at *6 (citing *Goffney v. Sauceda*, 340 F. App'x 181, 184 (5th Cir. 2009); *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)). Finally, excessive force and false arrest claims are "separate and distinct," such that an excessive force

claim must be analyzed "without regard to whether the arrest itself was justified." *Wooten*, 2024 WL 1815349 (citing *Thomas v. Gulotta*, 2017 WL 379449, at *7 (M.D. La. Jan. 26, 2017); quoting *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007)).

Because the parties dispute all material facts surrounding the altercation that ensued during Brown's arrest of Plaintiff, the Court cannot make the "fact intensive" determination of whether Brown's actions were objectively reasonable as a matter of law on the record before it. Thus, the Court finds that a genuine issue of material fact precludes summary judgment on this issue. The Court, however, will analyze Defendants' invocation of qualified immunity below.

ii.   **Battery.**

Louisiana Code of Criminal Procedure Article 220 provides, "A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained." La. Code Crim. Proc. art. 220. "The use of force by law enforcement officers must be tested by the 'reasonable force' standard established by this article. The test precludes 'clearly inappropriate force.'" *Kyle v. City of New Orleans*, 353 So. 2d 969, 972 (La. 1977) (quoting La. Code Crim. Proc. art. 220, Official Revision Comment (b)).

"The use of force when necessary to make an arrest is a legitimate police function." *Id.* "But if the officers use unreasonable or excessive force, they and their employer are liable for any injuries which result." *Id.* (citations omitted); *see also Penn v. St. Tammany Par. Sheriff's Off.*, 2002-0893 (La. App. 1 Cir. 4/2/03),

14

843 So. 2d 1157, 1161 (stating that excessive force transforms authorized use of force into a battery). "Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case." *Kyle*, 353 So. 2d at 973. "A court must evaluate the officers' actions against those of ordinary, prudent, and reasonable men placed in the same position as the officers and with the same knowledge as the officers." *Id.* "The degree of force employed is a factual issue." *Id.* (citations omitted).

The Louisiana Supreme Court has explained further:

> Several factors to be considered in making this determination are the known character of the arrestee, the risks and dangers faced by the officers, the nature of the offense involved, the chance of the arrestee's escape if the particular means are not employed, the existence of alternative methods of arrest, the physical size, strength, and weaponry of the officers as compared to the arrestee, and the exigencies of the moment.

*Kyle*, 353 So. 2d at 973 (citations omitted).

Ultimately, "excessive force claims under both federal and Louisiana law turn on whether the use of force was objectively reasonable given the totality of the circumstances. This has been widely recognized by [the Fifth Circuit], Louisiana federal district courts, and the Louisiana Supreme Court." *Shepherd on behalf of Est. of Shepherd v. City of Shreveport*, 920 F.3d 278, 286 (5th Cir. 2019) (collecting cases); *see Imani v. City of Baton Rouge*, 614 F. Supp. 3d 306, 380–81 (M.D. La. 2022).

For the same reasons described regarding Plaintiff's excessive force claim, the Court cannot determine whether Brown's actions were objectively reasonable on the record before it. Because a genuine issue of material fact precludes summary judgment on this issue, Defendant's Motion for Summary Judgment (Doc. 54) is

**DENIED** with respect to Plaintiff's state law battery claim.

###    iii.    Qualified Immunity.

In the alternative, however, Defendants assert the defense of qualified immunity to Plaintiff's excessive force claim under federal law. The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Ezell v. Seal*, No. CV 23-1514-SDD-EWD, 2025 WL 3124046, at *4 (M.D. La. Nov. 7, 2025).

"In determining whether an official enjoys immunity, [courts] ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Hope v. Pelzer*, 536 U.S. 730 (2002)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson*, 555 U.S. at 236.

The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Rodgers v. Edwards*, No. CV 21-233-JWD-SDJ, 2023 WL 9007801, at *2 (M.D. La. Dec. 18, 2023), *report and recommendation adopted*, No. CV 21-233-JWD-SDJ, 2023 WL 9001282 (M.D. La. Dec. 28, 2023) (citing *Michalik*

*v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Rodgers*, 2023 WL 9007801, at *2. "The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Id.* (citing *Michalik*, 422 F.3d at 262).

Here, Defendants argue that even if a factual dispute exists regarding Plaintiff's excessive force claim, Brown is entitled to qualified immunity. (Doc. 69 at 12). In support of their argument, Defendants offer the affidavit of their use-of-force expert, Kery Najolia, in which Najolia opines that Brown's use of force—the hands-on technique to prevent retreat, and the deployment of pepper spray—was consistent with police procedures, training, and police protocols. (Doc. 54-9 at ¶ 62). Defendants assert that "Plaintiff's core argument—that 'conflicting stories' (Doc. 59, p. 6) preclude summary judgment—misstates the qualified immunity standard." (Doc. 69 at 12).

For Plaintiff's part, he argues that he has "sufficiently alleged" that Brown acted with malice, stating: "Officer Brown was motivated by evil motive or intent and demonstrated reckless and callous indifference to plaintiff's constitutional rights." (Doc. 59 at 13). Plaintiff further argues that whether Brown's actions amounted to malice or incompetence is a question of fact for the jury. (*Id.* at 14).

17

Based on the altered burden of proof before the Court, however, Plaintiff must offer more than a conclusory allegation that Brown acted with malice to survive summary judgment. Instead, Plaintiff must rebut the defense by establishing that Brown's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct. *Rodgers*, 2023 WL 9007801, at *2. Plaintiff has not done so.

Accordingly, the Court finds that Brown is entitled to qualified immunity regarding Plaintiff's excessive force claim under federal law. Defendants' **Motion for Summary Judgment (Doc. 54)** is **GRANTED** in this respect.

### D. Defamation Under State Law.

Fourth, Defendants ask the Court to grant summary judgment in their favor because qualified privilege protects Brown from Plaintiff's defamation claim under Louisiana law. (Doc. 54-1 at 28). Plaintiff alleges that Brown defamed him by falsely charging Plaintiff with resisting arrest and trespass, which harmed Plaintiff's reputation in the community. (Doc. 30 at 8).

"Under Louisiana law a plaintiff must show four elements to prove defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Wooten*, 2024 WL 1815349, at *8 (citing *Bellard v. Gautreaux*, 675 F.3d 454, 464 (5th Cir. 2012); *Costello v. Hardy*, 864 So.2d 129, 139 (La. 2004)). "If even one of the required elements of the tort is lacking, the cause of action fails." *Wooten*, 2024 WL 1815349 (citing *Costello*, 864 So.2d at 139).

When "there is probable cause for [an] arrest, Louisiana law affords police officers a qualified privilege against defamation actions related to reports of the arrest and the charges on which the arrest was based." *Wooten*, 2024 WL 1815349 (citing *Robertson v. City of Shreveport*, No. CV 17-CV-0565, 2018 WL 1769373, at *3 (W.D. La. Apr. 12, 2018); *Thorn v. McGary*, 684 F. App'x 430, 435 (5th Cir. 2017)).

The Fifth Circuit has held that when there is probable cause for an arrest, "Louisiana law affords police officers a qualified privilege against defamation actions." *Thorn*, 684 F. App'x at 435 ("Indeed, we have already concluded that there was probable cause for Thorn's arrest, and under these circumstances, Louisiana law affords police officers a qualified privilege against defamation actions.") (citing *Trentecosta v. Beck*, 96-2388 (La. 10/21/97), 703 So. 2d 552, 562–64 (holding that police officers have a qualified privilege against defamation claims for "report[ing] the fact that a person was arrested and the charges for which the person is being held"); *see also Roche v. Aetna Cas. & Sur. Co.*, 303 So. 2d 888 (La. Ct. App. 1974), *writ denied*, 307 So. 2d 372 (La. 1975) (affirming dismissal of defamation claim where officer's arrest was supported by probable cause); *Wooten*, 2026 WL 299849, at *9 (When "there is probable cause for [an] arrest, Louisiana law affords police officers a qualified privilege against defamation actions related to reports of the arrest and the charges on which the arrest was based."); *Robertson*, 2018 WL 1769373, at *3 ("If there is probable cause for arrest, Louisiana law affords police officers a qualified privilege against defamation actions related to reports of the arrest and the charges on which the arrest was based.")).

Because the Court has found that Plaintiff's arrest was supported by probable cause, namely, the bench warrant for Plaintiff's arrest, Brown is entitled to a qualified privilege against Plaintiff's defamation claim. Accordingly, Plaintiff's defamation claim is **DISMISSED WITH PREJUDICE.** Defendants' Motion for Summary Judgment (Doc. 54) is **GRANTED** in this respect.

### E. Jurisdiction Over Remaining Claims.

Plaintiff's surviving claims include the following: (1) battery under state law against Defendant Brown; and (2) vicarious liability under state law against Defendant the Town of Clinton. A district court may decline to exercise supplemental jurisdiction over state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. Here, having dismissed Plaintiff's federal claims, the Court concludes that it is appropriate for the Court to decline the exercise of supplemental jurisdiction over Plaintiff's state law claims. *See Mitchell v. D.O.C.*, No. CIV.A. 12-0092-BAJ, 2013 WL 311440, at *6 (M.D. La. Jan. 25, 2013) ("[H]aving recommended that the plaintiff's federal claims asserted against the moving defendants be dismissed, the Court concludes that it is appropriate for the Court to decline the exercise of supplemental jurisdiction over the plaintiff's state law claims asserted herein.").

## V.      CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' **Motion For Summary Judgment (Doc. 54)** is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiff's false arrest claims under both federal and state law are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's malicious prosecution claims under both federal and state law are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Brown is entitled to qualified immunity with respect to Plaintiff's excessive force claim under federal law.

**IT IS FURTHER ORDERED** that Plaintiff's defamation claim under state law is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

Final Judgment shall be entered accordingly.

Baton Rouge, Louisiana, this 23rd day of February, 2026

_____

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**